FILED

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**            2018 AUG 16  PM 3: 37

UNITED STATES OF AMERICA,

     Plaintiff,

v.                                                    CASE NO. 6:18CV 1346 -ORL- 40-TBS

NET ONE INTERNATIONAL, INC.,

     Defendant,

_____/

## COMPLAINT

The United States of America, through the undersigned Assistant United States Attorney and on behalf of its agency, the Federal Communications Commission ("FCC"), brings this complaint, and states as follows:

## INTRODUCTION

1.    This is a civil action brought by the United States pursuant to the Communications Act of 1934 , 47 U.S.C. § 504(a), to enforce a Forfeiture Order issued by the Federal Communications Commission on March 9, 2016, assessing a monetary forfeiture penalty in the amount of $1,600,000.00 against Defendant Net One International, Inc. ("Net One"), for improperly billing consumers for unauthorized charges and fees purportedly in connection with long distance telephone service—a practice commonly known as "cramming"—in violation of Section 201(b) of the Communications Act of 1934, 47 U.S.C. § 201(b).

## JURISDICTION AND VENUE

2.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1345, and 1355, and 47 U.S.C. § 504(a).

3.     Venue is proper in the Middle District of Florida pursuant to 28 U.S.C. §§ 1355(b), 1391(b), and 1395(a) and 47 U.S.C. § 504(a), because the principal operating office of Net One is located within this District.

## PARTIES

4.     Plaintiff is the United States of America.

5.     Defendant Net One is a Delaware corporation that maintains its principal operating office at 4037 Metric Drive, Suite 200, Winter Park, Florida 32792. Net One is a toll reseller of domestic interexchange and international telecommunications services, who provides long distance telecommunications services by leasing switching equipment and lines from others.

## STATUTORY AND REGULATORY BACKGROUND

6.     The FCC is an independent federal regulatory agency created by Congress to regulate intrastate, interstate, and foreign wire and radio communications pursuant to the Communications Act of 1934, as amended ("Act"), 47 U.S.C. § 151, *et seq*. The FCC's regulatory authority includes the authority to regulate providers of telecommunications services.

7.     In accordance with 47 U.S.C. § 503(b)(1), "[a]ny person who is determined by the Commission . . . to have . . . willfully or repeatedly failed to comply with any of the provisions of [the Act] . . . or of any rule, regulation, or order issued by the Commission under th[e Act] . . . shall be liable to the United States for a forfeiture penalty."

2

8.    The Act defines "willful" for purposes of Section 503(b) as "the conscious and deliberate commission or omission of [an] act, irrespective of any intent to violate any provision of this [Act] or any rule or regulation of the Commission authorized by this [Act.]" 47 U.S.C. § 312(f)(1). The Act defines "repeated" for purposes of Section 503(b) as "the commission or omission of [an] act more than once, or, if such commission or omission is continuous, for more than one day."   47 U.S.C. § 312(f)(2). The legislative history of Section 312(f) of the Act clarifies that the definitions of "willful" and "repeated" apply to both Sections 312 and 503(b) of the Act, and the FCC has so interpreted the terms in the Section 503(b) context. *See* H.R. Rep. No. 97-765, 97th Cong. 2d Sess. 51 (1982); *Southern California Broadcasting Co.*, 6 FCC Rcd 4387, 4388 ¶5 (1991), *reconsid. denied*, 7 FCC Rcd 3454 (1992).

9.    "In determining the amount of ... a forfeiture penalty, the Commission ... shall take into account the nature, circumstances, extent and gravity of the violation and, with respect to the violator, the degree of culpability, any history of prior offenses, ability to pay, and such other matters as justice may require." 47 U.S.C. § 503(b)(2)(E); *see* 47 C.F.R. § 1.80(b)(8).

10.    The Act requires that forfeitures assessed by the FCC shall be "payable into the Treasury of the United States" and shall be "recoverable ... in a civil suit in the name of the United States." 47 U.S.C. § 504(a).

11.    As relevant here, no forfeiture penalty shall be imposed against a person by the FCC unless and until:

> (A) the Commission issues a notice of apparent liability, in writing, with respect to such person; (B) such notice has been received by such person, or until the Commission has sent such notice to the last known address of such person, by

registered or certified mail; and (C) such person is granted an opportunity to show, in writing ... why no such forfeiture penalty should be imposed.

47 U.S.C. § 503(b)(4).

12.   The Act declares to be unlawful any "unjust or unreasonable . . . charges, practices, classifications, and regulations . . . for and in connection with [interstate or foreign wire or radio] communication service." 47 U.S.C. § 201(b). The FCC has found that unfair and deceptive marketing practices by interstate common carriers constitute unjust and unreasonable practices under Section 201(b). *See, e.g., STi Telecom, Inc. (formerly Epana Networks, Inc.)*, Forfeiture Order, 30 FCC Rcd 11742, 11744, para. 7 (2015).

13.   The practice of "cramming," or including unauthorized charges and fees on consumer's telephone bills, is also an "unjust and unreasonable" practice under Section 201(b). *See, e.g., Central Telecom Long Distance, Inc.*, Forfeiture Order, 31 FCC Rcd 10392, 10399 ¶15 (2016).

## THE VIOLATIONS AND NOTICE OF APPARENT LIABILITY

14.   Beginning in 2010, the FCC's Enforcement Bureau ("Bureau") reviewed more than 100 consumer complaints filed against Net One with the Federal Trade Commission ("FTC") and the Better Business Bureau ("BBB"), and the FCC. The complainants alleged that Net One continued billing them after they had paid their final bill and and notified Net One that they were cancelling their accounts. In 2014, the Bureau investigated the complaints and issued an order imposing a $25,000 forfeiture on Net One for failure to produce information and documents relating to the investigation.[1] After the investigation, consumers

---

[1] *See Net One International, LLC, et al.*, Notice of Apparent Liability for Forfeiture and Order, 26 FCC Rcd 16493 (EB 2011); *Net One International, LLC, et al.*, Order of Forfeiture, 29 FCC Rcd 264 (EB 2014), *reconsid. denied*, 30 FCC Rcd 1021 (EB 2015) ("2014 Forfeiture Order"). This Complaint does not involve the forfeiture relating to Net One's failure to cooperate in the investigation.

continued to file complaints against Net One for similar instances of unauthorized charges. The consumers alleged that after closing their accounts with Net One, the company continued to charge them monthly service charges, taxes, and other fees. Additionally, the consumers alleged that Net One assessed late fees on their costomers accounts, which compounded monthly. Furthermore, the consumers alleged that Net One refused to stop billing them unless they paid additional charges and fees that were not authorized.

15.   On July 15, 2014, the FCC issued a Notice of Apparent Liability for Forfeiture to Net One in the amount of $1,600,000.00, for apparent willful and repeated violations of 47 U.S.C. § 201(b). Exhibit 1, Net One International, Inc., Notice of Apparent Liability for Forfeiture, 29 FCC Rcd 9046 (EB 2014) ("*2014 NAL*"). The FCC concluded, based on its review of the complaints of 20 individual consumers, that Net One had continued to bill consumers, without authorization, after they had cancelled their service and that Net One's "practices with respect to these consumers [were] unjust and unreasonable and an apparent violation of Section 201(b) of the Act." *Id.* at ¶7.[2]

## THE FORFEITURE ORDER

16.   Net One filed a response to the *2014 NAL* on September 14, 2014. The response contended that the forfeiture should be cancelled because the *2014 NAL* lacked substantial evidence to support its conclusion, was arbitrary and capricious, violated public policy, and would impose a financial hardship on Net One.

17.   On March 9, 2016, the FCC released a Forfeiture Order finding that Net One's practices were "egregious" and constituted "cramming," or more specifcally, the willful and

---

[2] Although the FCC reviewed more than 100 consumer complaints against Net One for unauthorized charges, the *2014 NAL* is based on 20 complaints filed after the FCC issued the 2014 Forfeiture Order. Exh. 1 at 2 n.7.

repeated imposition of unauthorized charges in violation of the Act. 47 U.S.C. § 201(b). Ex. 2, *Net One International, Inc.*, 31 FCC Rcd 11112 (2016) ("*2016 Forfeiture Order*"). The 2016 Forfeiture Order addressed each of the arguments raised by Net One in its response to the *2014 NAL*, rejecting each. *Id.*

18.     The FCC concluded that Net One had violated Section 201(b) by continuing to charge complainants after becoming aware of billing errors and by continuing to assess unauthorized charges on complainants. Ex. 2 at ¶¶ 8-31. The FCC also concluded that Net One's unauthorized billing of consumers was willful. *Id.* ¶¶ 32-33. Finally, the FCC concluded that the forfeiture liability was appropriate in light of the FCC's statutory authority and the agency's policy and precedent. *Id.* ¶¶ 34-39.

## DEMAND FOR PAYMENT

19.     The Forfeiture Order provided that if Net One did not pay the forfeiture within thirty calendar days after the release date of the Forfeiture Order, the case could be referred to the Department of Justice for enforcement pursuant to 47 U.S.C. § 504(a). Ex. 2 at ¶¶ 41-44.

20.     To date, Net One has not paid the Forfeiture.

21.     The Certificate of Forfeiture is attached as Exhibit 3.

## CLAIM FOR RELIEF

22.     Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 21 above.

23.     Net One willfully and repeatedly violated the Act, by charging 20 specifically identified consumers/complainants unauthorized charges and fees. 47 U.S.C. § 201(b).

24.    The FCC properly issued a Forfeiture Order on March 9, 2016, pursuant to 47 U.S.C. § 503(b), in which it asserted a total forfeiture penalty in the amount of $1,600,000 against Net One for its violations of 47 U.S.C. § 201(b).

25.    By reason of the foregoing, Net One is liable to the United States for a forfeiture penalty. *See* 47 U.S.C. § 503(b); 47 C.F.R. § 1.80; *The Commission's Forfeiture Policy Statement and Amendment of Section 1.80 of the Rules to Incorporate the Forfeiture Guidelines*, Report and Order, 12 FCC Rcd 17087 (1997), (*Forfeiture Guidelines*), *recons. denied*, Memorandum Opinion and Order, 15 FCC Rcd 303 (1999).

WHEREFORE, Plaintiff demands judgment against Defendant as follows:

a.    Judgment in the amount of $1,600,000.00;

b.    Interest from the date of judgment at the legal rate in effect on the date of judgment, pursuant to 28 U.S.C. § 1961;

c.    Costs and disbursements incurred by Plaintiff in this action; and

d.    Such other further relief that the Court may deem just and proper.

Dated: August 16, 2018.

Respectfully submitted,

MARIA CHAPA LOPEZ
United States Attorney

By:  _____

PHILLIP R.S. RAGLER
Assistant United States Attorney
USAO No. 181
400 W. Washington St., Ste., 3100
Orlando, FL 32801
Telephone: (407) 648-7500
Fax: (407) 648-7588
Email: phillip.ragler@usdoj.gov

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

UNITED STATES OF AMERICA,

     Plaintiff,

v.                         CASE NO. _____

NET ONE INTERNATIONAL, INC.,

     Defendant,

_____/

**<u>COMPLAINT</u>**

Exhibit 1

Federal Communications Commission                    **FCC 14-100**

**Before the
Federal Communications Commission
Washington, DC 20554**

| | | |
|---|---|---|
| In the Matter of | ) | File No.: EB-TCD-12-00000418[1] |
| | ) | |
| Net One International, Inc. | ) | NAL/Acct. No.: 201432170010 |
| | ) | |
| Apparent Liability for Forfeiture | ) | FRN: 0004337556 |

**NOTICE OF APPARENT LIABILITY FOR FORFEITURE**

**Adopted: July 11, 2014**                    **Released: July 15, 2014**

By the Commission:

## I.     INTRODUCTION

1.      We propose a penalty of $1,600,000 against Net One International, Inc. (Net One or Company), for apparently billing consumers for unauthorized charges and fees purportedly in connection with long distance telephone service—a practice commonly known as "cramming." Consumers explained that Net One charged them for services and "late fees" *after* they had affirmatively cancelled their service and paid their final bills. Indeed, many consumers complained that the Company threatened them with collection actions if they did not pay charges they had not authorized. The Commission is committed to protecting consumers against cramming and will take aggressive action against carriers that perpetrate such unjust and unreasonable acts. We propose this penalty after evaluating over 100 consumer complaints against Net One as part of our ongoing effort to protect consumers from being charged by carriers for services they did not authorize.

## II.    BACKGROUND

2.      Net One[2] is a toll reseller that offers interexchange and international service.[3] The Company has offices at 6931 University Blvd., Winter Park, Florida 32792.[4]

3.      The Bureau reviewed over 100 consumer complaints filed against Net One with the Federal Communications Commission (Commission), the Federal Trade Commission (FTC), and the Better Business Bureau (BBB).[5] Complainants allege that while they were once customers of Net One, in

---

[1] This case was formerly assigned the file number EB-11-TC-063. In January 2012, the Enforcement Bureau's Telecommunications Consumers Division assigned the case a new file number.

[2] This carrier's name is at times spelled "NetOne" in consumer complaints, and elsewhere, due to the way it appears on the Company's letterhead.

[3] Net One is a common carrier providing telecommunications services. The Company was granted international Section 214 authority on July 3, 1997. *See* ITC-214-19970516-00273.

[4] Net One also uses the following addresses: P.O. Box 4970, Winter Park, FL 32793 (on the FCC Form 499-A) and P.O. Box 863511, Orlando, FL 32886-3511 (on invoices). Samer Charani is the President and Chief Executive Officer of Net One, Mahmoud Amir Elmasri is the Vice President, and El Bashir Alaoui Hichami is the Treasurer.

[5] *See* consumer complaints on file in EB-TCD-12-0000418.

many cases the Company continued to bill them long after they had paid their final bill and notified Net One's customer service department that they were cancelling their accounts.[6]

4.      Due to the large number of consumer complaints filed against the Company and the alleged misconduct evidenced by those complaints,[7] the Commission's Enforcement Bureau (Bureau) initiated an investigation of Net One's practices by issuing a letter of inquiry (LOI) to the Company.[8] Net One failed to submit a timely response to the LOI, and the Bureau released a Notice of Apparent Liability for Forfeiture proposing a $25,000 forfeiture based on the Company's failure to respond to a Commission order.[9] Subsequently, the Bureau released a Forfeiture Order affirming the $25,000 forfeiture.[10] Following the *2011 Net One NAL*, consumers continued to file complaints against Net One, alleging similar instances of unauthorized charges.

## III.   DISCUSSION

5.      Based on the evidence before us, we find that Net One apparently willfully and repeatedly violated Section 201(b) of the Communications Act of 1934, as amended (Act).[11] Section 201(b) of the Act states, in pertinent part, that "[a]ll charges, practices, classifications, and regulations for and in connection with [interstate or foreign] communication service [by wire or radio], shall be just and reasonable, and any such charge, practice, classification, or regulation that is unjust or unreasonable is hereby declared to be unlawful."[12] The Commission has found that the inclusion of unauthorized charges and fees on consumers' telephone bills—or "cramming"—is an "unjust and unreasonable" practice under Section 201(b).[13] Cramming can occur when carriers place unauthorized charges on their own telephone bills.[14]

---

[6] Net One's invoices provide a customer service toll-free number and a website address, www.mynetone.com. The website, which contains almost no information other than a message indicating it is in the process of "being reworked," lists a different toll-free number for customer service. *See* http://netoneinternational.com/ (last visited June 30, 2014).

[7] Approximately 80 consumer complaints against Net One for unauthorized charges were filed with the Commission in 2010, which led to our initial investigation of the Company. Additional consumer complaints about the Company have been filed intermittently. This NAL is based on 20 complaints filed recently with the Commission and the Better Business Bureau. Many complaints allege multiple instances of unauthorized charges.

[8] *See* Letter from Richard A. Hindman, Chief, Telecommunications Consumers Division, Enforcement Bureau, FCC, to Samer Charani, President and Chief Executive Officer, Net One (July 15, 2011) (on file in EB-TCD-12-00000418).

[9] *Net One International, et al.,* Notice of Apparent Liability for Forfeiture and Order, 26 FCC Rcd 16493 (Enf. Bur. 2011) (*2011 Net One NAL*). Following the issuance of the *2011 Net One NAL*, Net One submitted an incomplete LOI response to the Bureau.

[10] *Net One International, et al., Apparent Liability for Forfeiture,* Order of Forfeiture, 29 FCC Rcd 264 (Enf. Bur. 2014) (*Net One Forfeiture Order*). On February 13, 2014, Net One filed a petition for reconsideration. *See* E-mail from Thomas Gainor, Moffa, Gainor & Sutton PA, to Mika Savir, Attorney Advisor, Telecommunications Consumers Division, FCC Enforcement Bureau (Feb. 13, 2014, 18:56 EDT). The petition remains pending.

[11] 47 U.S.C. § 201(b).

[12] *Id.*

[13] *See, e.g., Central Telecom Long Distance, Inc.,* Notice of Apparent Liability for Forfeiture, FCC 14-58, 2014 WL 1778549, at *5, para. 14 (May 5, 2014) (*Central NAL*); *U.S. Telecom Long Distance. Inc.,* Notice of Apparent Liability for Forfeiture, 29 FCC Rcd 823, 829, para. 14 (2014) (*USTLD NAL*); *Consumer Telcom, Inc.,* Notice of Apparent Liability for Forfeiture, 28 FCC Rcd 17196, 17202, para. 15 (2013) (*CTI NAL*); *Advantage Telecomms., Corp.,* Notice of Apparent Liability for Forfeiture, 28 FCC Rcd 6843, 6849, para. 16 (2013) (*Advantage NAL*); *see also Long Distance Direct, Inc., Apparent Liability for Forfeiture,* Memorandum Opinion and Order, 15 FCC Rcd 3297, 3302, para. 14 (2000) (*LDDI MO&O*) (finding that the company's practice of cramming membership and

(continued....)

6.        During the course of its investigation, the Bureau reviewed over 100 consumer complaints alleging, among other things, that Net One billed consumers for long distance service after they had cancelled their service with Net One and paid their final bill.  Some consumers explain that after closing their accounts with Net One, the Company continued to charge them, and often assessed late fees which compounded month after month.  Other consumers state that Net One refused to stop billing them unless they paid additional charges and fees which were not authorized in the first place.  For example:

- Complainant Ahmed stopped using Net One when he became a CenturyLink subscriber in January 2013.[15]  Mr. Ahmed repeatedly called Net One customer service to cancel his account. Nevertheless, Net One continued to bill Mr. Ahmed monthly, claiming that they could not cancel his account because they could not access his "account information."  Finally, Net One agreed to stop billing him if he would pay an additional $10.99.  Mr. Ahmed explains that "the customer agent asked me to pay $10.99 and that would stop billing statements.  I paid the amount at the time but the monthly billing never stopped . . . . [N]ow they want me to [pay] $25.00 including $10.00 of late fee charges otherwise they would send the bill to collection agency."[16]

- Complainant Bhatti, now an AT&T customer, "tried to cancel the Net One service.  Net One states that they cannot cancel his service."[17]  Mr. Bhatti, who no longer uses Net One, repeatedly asked Net One customer service to cancel his account, but they are "still sending [him] bills."[18]

- Complainant Birouty tried numerous times to cancel his parents' account with Net One.[19]  He explains that initially, on September 16, 2013, "I told them to cancel my parents account.  [I] talked to a gentleman who told me there is an outstanding balance of $15.02 that must be paid before closing the account . . . . I told him I will pay it, but to close the account.  He said . . . as soon as they receive my payment they will close the account.  I sent in the payment the same day."[20]  One month later they "received a bill from NetOne that showed my payment was received in full and they did not close my account, but rather they levied another $10 late fee."  He called Net One customer service to ask why the account was not closed, and the customer service representative "said that my account cannot be closed because it has an outstanding balance that I have to pay."[21]  The Net One representative told him that she could not close his account because only Mohamed Abdel Ghani is authorized to close accounts.  On October 24, 2013, Mr. Birouty spoke with Mr. Ghani, who "would not close that account [but] . . . said he would remove all charges and I would receive a $0 [invoice] now and for every month and would only ever get billed if we used the [service]."  Despite the fact that Mr. Ghani assured Mr. Birouty

---

(Continued from previous page) ——————————
other unauthorized fees on consumer telephone bills was an unjust and unreasonable practice in connection with communications services).

[14] See *Advantage NAL* at 6850, para. 17.

[15] Complaint from M. Ahmed.

[16] *Id.*

[17] Complaint from M. Bhatti.

[18] *Id.*  These bills have no charges for long distance calls; they are just late fees and other fees.  The most recent bill was for over $200.  *Id.*

[19] Complaint from I. Birouty.

[20] *Id.*

[21] *Id.*

that the balance was $0, and they would be charged only if they resumed using the service, Net One billed the Biroutys an additional $30.15.[22]

- Complainant Chakkala had a similar experience with Net One. He explains, "I have attempted to cancel my account . . . on numerous occasions. Thus far, there has been no resolution on the matter . . . . A representative for [Net One,] Mr. Mohammed Abdelghany, provided me with a 'cancellation fee' of $40.00 in order to terminate my account. I paid the stated cancellation fee only to continue receiving bills."[23]

- Complainant Elgowainy explains that Net One called him and offered a calling package for international calls with a "14 day money back guarantee."[24] Because the plan turned out to be more expensive than he anticipated, Mr. Elgowainy tried to cancel the Net One plan the following day and have his money refunded, but his request to cancel was refused because, according to Net One, it was "not a good reason to cancel."[25]

- Complainant El-Nakhal tried to cancel Net One's service in September 2012. He called the Net One customer service representative several times, but the Company continued to bill him. Customer service finally agreed to cancel his account and he paid a final bill of $8.21. Then he "received a new bill."[26] He explains that "Netone refuses to cancel the service unless I pay $10. They threatened me with collection."[27] Mr. El-Nakhal, now an AT&T customer, has been "receiving an increasing monthly bill from NET one. We try to call every month. No answer and no return calls."[28]

- Complainant Foster called Net One to cancel her account on February 12, 2013.[29] She was told that she would not be charged as long as she did not use the service, and she paid her account in full.[30] She explains, "I kept getting bills & did not use the company's services. Wrote 2 letters & sent certified telling them that I canceled in Feb. & that I owe nothing. I didn't get a response. Called on 12/7/13 [and, eventually, was told that] I was supposed to call every month to reverse the monthly charges. I stated why do I need to do that when I canceled in Feb. . . . He stated that I need to pay my account in full in order to cancel. I have already done that in Feb. & and that I have sent letters about this. He said he could do nothing for me. . . ."[31] Since then, Net One continued to bill Ms. Foster for a total of $167.76.[32] Subsequently, Ms. Foster explains, "a representative from Net One . . . left me a voicemail informing me that I do not have to pay. I

---

[22] *Id.* Net One eventually charged the Biroutys $75.23, and they settled for the sum of $37.61 after Net One finally agreed to cancel the account on February 7, 2014.

[23] Complaint from J. Chakkala.

[24] Complaint from A. Elgowainy.

[25] *Id.*

[26] Complaint from H. El-Nakhal.

[27] *Id.*

[28] *Id.*

[29] Complaint from D. Foster.

[30] *Id.*

[31] *Id.*

[32] *Id.*

STILL GOT ANOTHER INVOICE AGAIN. . . . NetOne did credit the account $167.76 BUT are still charging me $3.11 [per month] and will keep sending me invoices to pay. I WANT THEM TO STOP!"[33]

- Complainant George, now a Comcast customer, explains "I called customer service [to inform Net One that I was cancelling its service] and they gave me an 'access number' to call but that did not work. They assured me that if I didn't use their access number I would not be charged. So I have not made any calls but every month they keep piling on taxes and late fees."[34] Notwithstanding numerous attempts to cancel the service, "NetOne keeps billing . . . even though there are ZERO calls . . . just taxes and 'late fees.' I have called their customer service a number of times . . . ."

- Complainant Gopalan, a Net One international prepaid calling card customer, discovered that Net One had opened a separate long distance account for him without his permission. After Net One sent him several bills, Mr. Gopalan repeatedly called to cancel the new account. "The Customer Service person agreed to close the account and credit the balance . . . . [After calling again] the Customer Service person I spoke to . . . said the account was still open, and agreed to close it and credit the balance shown on the bill . . . . I received another bill from NetOne . . . . I again called . . . the same customer service person . . . said that he will close the account immediately and give credit . . . . I have now received another bill from NetOne."[35]

- Complainant Mattam explains, "I have called on various occasions to cancel our services with NetOne . . . . After speaking to their [customer service] representative it would seem as if my service has been ended, however, I am still being billed by this company every single month. Not only are we still being charged for a service that we have cancelled, we are still being charged administrative fees including late fees and printing fees."[36]

- Complainant Towfeles explains that after she closed her account and paid her final bill in January 2013, Net One reopened her account and "[t]hey kept charging me about $18 a month for the past 7 months, including taxes and late fees every month until the balance has reached $120.07 as of October 2013 . . . . They do admit . . . that their account shows that we paid the full balance in January 2013. Despite many calls [to customer service] and despite talking to multiple people, . . . they still insist that we owe this amount and keep threatening to send it to collection."[37]

Other complainants offer similar experiences in trying to cancel their Net One accounts and finding that Net One continued to charge them for service, late fees, and other charges.[38]

---

[33] *Id.*

[34] Complaint from S. George.

[35] Complaint from B. Gopalan.

[36] Complaint from T. Mattam.

[37] Complaint from M. Towfeles.

[38] *See, e.g.*, Complaint from S. Batarseh ("This has been going on for months now [after I cancelled service last year] they are still charging me monthly service fees."); Complaint from J. Geevarghese ("Net One . . . keeps billing me and refuses to stop billing me . . . . I do not want to pay for service that was not provided to me."); Complaint from B. Hadeed ("This company has been billing me and adding late charges falsely . . . .We called customer service [to cancel and resolve this issue] and each time it was a very unprofessional rep. that provides no help . . . . I want this company to stop sending us their false bills with charges we never had in the first place."); Complaint from M.

(continued....)

7.      Based on the evidence from the investigation, we conclude that Net One did not have authorization to continue billing consumers after they cancelled their service. After a consumer cancels his or her account and has paid any outstanding charges due and owing, any further charges by a carrier are inherently unjust and unreasonable. Accordingly, we find that Net One's practices with respect to these consumers unjust and unreasonable and an apparent violation of Section 201(b) of the Act.[39]

## IV.   PROPOSED FORFEITURE

8.      Section 503(b)(1) of the Act states that any person who willfully or repeatedly fails to comply with any provision of the Act or any rule, regulation, or order issued by the Commission, shall be liable to the United States for a forfeiture penalty.[40] Section 503(b)(2)(B) of the Act empowers the Commission to assess a forfeiture of up to $150,000 for any violation occurring before September 13, 2013, and $160,000 for any violations occurring on or after that date, for each willful or repeated violation of the Act or of any rule, regulation, or order issued by the Commission under the Act.[41] In exercising our forfeiture authority, we are required to take into account "the nature, circumstances, extent, and gravity of the violation and, with respect to the violator, the degree of culpability, any history of prior offenses, ability to pay, and such other matters as justice may require."[42] In addition, the Commission has established forfeiture guidelines, which set forth base penalties for certain violations and identify criteria that we consider in exercising our discretion in determining the penalties to apply in any given case.[43]

(Continued from previous page) ————————————————
Haughton ("I was with Netone International for over 5 years . . . . I have been calling and requesting [cancellation because] I don't have the number I registered my phone with them any longer . . . and I made about 8 calls [asking] why they are still billing me . . . . [E]very month they add 10.00 to 12.00 on the bill for the service I don't even have."); Complaint from M. Karam ( "continued to receive a bill with late fees" months after cancelling and paying the final bill); Complaint from H. Nakhoul (not included in the Appendix) ("cancelled [her] service with Net One almost two years ago . . . [and she] was told this bill will likely climb to $500 if she doesn't pay it."); Complaint from D. Papapitiya ("I have called them and asked repeatedly to cancel my account, and they send bills . . . for monthly fee[s] and followed by additional fees."); Complaint from E. Sakkal (not included in the Appendix) ("They charged me for services after I wrote to them to discontinue my service."); Complaint from M. Sibay ("[Net One] continue[s] adding more amounts to a bill for services I did not ask for and I have asked [them] to stop or cancel whatever service they think they are offering me. We had a prepaid service and then [Net One] inexplicably started billing me monthly charges which are not explained . . . . [W]e spoke with multiple reps who promised to resolve this issue . . . . I officially requested [cancellation of this service which I had not authorized.]"); Complaint from S. Tantawy ("I ended my contract with the company a year ago . . . . They did not stop sending me bills [with] late fees and accumulated charges . . . which they claim is $29."); Complaint from L. Wilwerding ("I cancelled this service months ago . . . [but] they have been sending me bills, adding on late fees and demanding payment.").

[39] The Appendix identifies the 20 complaints, evidencing apparent violations of Section 201(b) of the Act occurring in the past 12 months that form the basis of the proposed forfeiture. Most of the consumer complaints describe several instances of cramming; however, we are assessing a forfeiture for one instance per complaint.

[40] *See* 47 U.S.C. § 503(b)(1).

[41] 47 U.S.C. § 503(b)(2)(B); *see also* 47 C.F.R. § 1.80(b)(2). The Federal Civil Penalties Inflation Adjustment Act of 1990, Pub. L. No. 101-410, 104 Stat. 890, as amended by the Debt Collection Improvement Act of 1996, Pub. L. No. 104-134, Sec. 31001, 110 Stat. 1321 (DCIA), requires the Commission to adjust its forfeiture penalties periodically for inflation. *See* 28 U.S.C. § 2461 note (4). The Commission most recently adjusted its penalties to account for inflation in 2013. *See Amendment of Section 1.80(b) of the Commission's Rules, Adjustment of Civil Monetary Penalties to Reflect Inflation,* 28 FCC Rcd 10785 (Enf. Bur. 2013); *see also* Inflation Adjustment of Monetary Penalties, 78 Fed. Reg. 49,370–01 (Aug. 14, 2013) (setting September 13, 2013, as the effective date for the increases). The base forfeiture amount for cramming is still $40,000.

[42] *See* 47 U.S.C. § 503(b)(2)(E); *see also The Commission's Forfeiture Policy Statement and Amendment of Section 1.80 of the Commission's Rules,* Report and Order, 12 FCC Rcd 17087, 17100–01, para. 27 (1997) (*Forfeiture Policy Statement*).

[43] 47 C.F.R. § 1.80(b)(8), Note to paragraph (b)(8).

Under the guidelines, we may adjust a forfeiture upward for violations that are egregious, intentional. or repeated, or that cause substantial harm or generate substantial economic gain for the violator.[44]

9.        The Commission's forfeiture guidelines provide no base forfeiture for cramming; however. the Commission has established a $40.000 base forfeiture for cramming violations.[45]  Applying the $40,000 base forfeiture to each of the 20 cramming violations[46] would result in a forfeiture of $800,000.

10.        Given the facts presented here, we believe that an upward adjustment is warranted.  As the Commission reiterated in the *Central NAL*, "we may propose more significant forfeitures in the future as high as necessary, within the range of our statutory authority, to ensure that such companies do not charge consumers for unauthorized services."[47]  Net One apparently engaged in cramming repeatedly, including placing unauthorized charges on consumers' telephone bills multiple times—indeed, we have reviewed many consumer complaints alleging improper conduct on Net One's part.  We also note that the Bureau began this cramming investigation in 2011 and previously issued the *2011 Net One NAL* based on the Company's failure to respond to the Bureau's inquiries, yet Net One has nevertheless continued to engage in the same conduct: imposing unauthorized charges on consumers' bills and preventing consumers from closing their accounts.  Under Section 503, we may take into account the egregious and repeated nature of Net One's actions and, consistent with our recent enforcement actions,[48] upwardly adjust the proposed forfeiture for its apparent cramming violations.[49]  Given the egregious circumstances here and the extent of Net One's improper conduct and the longstanding nature of Net One's cramming practices, all in the face of the repeated warnings of the Commission that cramming would not be tolerated, we determine that an upward adjustment of $800,000 is appropriate here.  Accordingly, the total forfeiture we propose for Net One's conduct is $1,600,000.

## V.    CONCLUSION

11.        Based on the facts and record before us, we have determined that Net One International, Inc. has apparently willfully and repeatedly violated Section 201(b) of the Communications Act of 1934, as amended.

---

[44] *Id.*

[45] *See LDDI MO&O*, 15 FCC Rcd at 3304, para. 19 (affirming the $40,000 penalty for cramming imposed by the Commission in the forfeiture order); *Central NAL*. 2014 WL 1778549, at *10, para. 25; *USTLD NAL*, 29 FCC Rcd at 835, para. 24; *CTI NAL*, 28 FCC Rcd at 17207, para. 26.

[46] The Commission has made clear that each unauthorized charge a carrier places on a consumer's bill—or "cram"—constitutes a separate and distinct violation of Section 201(b). *See CTI NAL*, 28 FCC Rcd at 17208, n.79 (citing *NOS Commc'ns, Inc.*, Notice of Apparent Liability for Forfeiture, 16 FCC Rcd 1833 (2001)); *Central NAL*, 2014 WL 1778549, at n.84 (same); *USTLD NAL*, 29 FCC Rcd at 836, n.94 (same).  Based on the record in the instant case, we decline to exercise our discretion in that way at this time.  Rather, we apply an upward adjustment to the proposed forfeiture amount to take into account these additional violations.

[47] *Central NAL*, 2014 WL 1778549, at *11, para. 28 (citing *Main Street Telephone Co.*, Notice of Apparent Liability for Forfeiture, 26 FCC Rcd 8853, 8861, para. 24 (2011)).  *See also USTLD NAL*, 29 FCC Rcd at 837, para. 27 (same); *CTI NAL*, 28 FCC Rcd at 17207, para. 29 (same).

[48] *See, e.g.. Central NAL*. 2014 WL 1778549, at *11, para. 28; *USTLD NAL*, 29 FCC Rcd at 837, para. 27; *CTI NAL*, 28 FCC Rcd at 17207, para. 29; *Main Street Telephone Co.*, Notice of Apparent Liability for Forfeiture, 26 FCC Rcd 8853, 8861, para. 24 (2011); *VoiceNet Telephone, LLC*, Notice of Apparent Liability for Forfeiture, 26 FCC Rcd 8874, 8882, para. 24 (2011); *Cheap2Dial Telephone Co.*, Notice of Apparent Liability for Forfeiture, 26 FCC Rcd 8863, 8872, para. 25 (2011); *Norristown Telephone Co., LLC*, Notice of Apparent Liability for Forfeiture, 26 FCC Rcd 8844, 8851, para. 23 (2011).

[49] In the future we may also seek to revoke a carrier's authorization. *See CCN Revocation Order*, 13 FCC Rcd 13599 (1998) (revoking a company's operating authority under Section 214 for repeatedly slamming consumers).

## VI.   ORDERING CLAUSES

12.      Accordingly, **IT IS ORDERED,** pursuant to Section 503(b) of the Communications Act of 1934, as amended, 47 U.S.C. § 503(b), and Section 1.80 of the Commission's rules, 47 C.F.R. § 1.80, that Net One International, Inc. is hereby **NOTIFIED** of this **APPARENT LIABILITY FOR FORFEITURE** in the amount of $1,600,000 for willful and repeated violations of Section 201(b) of the Communications Act of 1934, as amended, 47 U.S.C. § 201(b).

13.      **IT IS FURTHER ORDERED THAT,** pursuant to Section 1.80 of the Commission's rules, 47 C.F.R. § 1.80, within thirty (30) days of the release date of this Notice of Apparent Liability for Forfeiture, Net One International, Inc. **SHALL PAY** the full amount of the proposed forfeiture or **SHALL FILE** a written statement seeking reduction or cancellation of the proposed forfeiture.

14.      Payment of the forfeiture must be made by check or similar instrument, wire transfer, or credit card, and must include the NAL/Account number and FRN referenced above. Net One International, Inc. shall send electronic notification of payment to Johnny Drake at johnny.drake@fcc.gov on the date said payment is made. Regardless of the form of payment, a completed FCC Form 159 (Remittance Advice) must be submitted.[50] When completing the FCC Form 159, enter the Account Number in block number 23A (call sign/other ID) and enter the letters "FORF" in block number 24A (payment type code). Below are additional instructions Net One International, Inc. should follow based on the form of payment it selects:

- Payment by check or money order must be made payable to the order of the Federal Communications Commission. Such payments (along with the completed Form 159) must be mailed to Federal Communications Commission, P.O. Box 979088, St. Louis, MO 63197-9000, or sent via overnight mail to U.S. Bank – Government Lockbox #979088, SL-MO-C2-GL, 1005 Convention Plaza, St. Louis, MO 63101.

- Payment by wire transfer must be made to ABA Number 021030004, receiving bank TREAS/NYC, and Account Number 27000001. To complete the wire transfer and ensure appropriate crediting of the wired funds, a completed Form 159 must be faxed to U.S. Bank at (314) 418-4232 on the same business day the wire transfer is initiated.

- Payment by credit card must be made by providing the required credit card information on FCC Form 159 and signing and dating the Form 159 to authorize the credit card payment. The completed Form 159 must then be mailed to Federal Communications Commission, P.O. Box 979088, St. Louis, MO 63197-9000, or sent via overnight mail to U.S. Bank – Government Lockbox #979088, SL-MO-C2-GL, 1005 Convention Plaza, St. Louis, MO 63101.

15.      Any request for making full payment over time under an installment plan should be sent to: Chief Financial Officer — Financial Operations, Federal Communications Commission, 445 12th Street, SW, Room 1-A625, Washington, DC 20554.[51] If Net One International, Inc. has questions regarding payment procedures, it can contact the Financial Operations Group Help Desk by phone, 1-877-480-3201, or by e-mail, ARINQUIRIES@fcc.gov.

---

[50] An FCC Form 159 and detailed instructions for completing the form may be obtained at http://www.fcc.gov/Forms/Form159/159.pdf.

[51] *See* 47 C.F.R. § 1.1914.

16.      The response, if any, must be mailed both to the Office of the Secretary, Federal Communications Commission, 445 12th Street, SW, Washington, DC 20554, ATTN: Enforcement Bureau, Telecommunications Consumers Division, and to Richard A. Hindman, Chief, Telecommunications Consumers Division, Enforcement Bureau, Federal Communications Commission, 445 12th Street, SW, Washington, DC 20554, and must include the NAL/Acct. No. referenced in the caption.

17.      The Commission will not consider reducing or canceling a forfeiture in response to a claim of inability to pay unless the petitioner submits: (1) federal tax returns for the most recent three-year period; (2) financial statements prepared according to generally accepted accounting practices; or (3) some other reliable and objective documentation that accurately reflects the petitioner's current financial status. Any claim of inability to pay must specifically identify the basis for the claim by reference to the financial documentation submitted.

18.      **IT IS FURTHER ORDERED** that a copy of this Notice of Apparent Liability for Forfeiture shall be sent by Certified Mail Return Receipt Requested and First Class Mail to Net One International, Inc.'s attorney, Thomas R. Gainor, Law Offices of Moffa, Gainor, and Sutton, P.A., One Financial Plaza, Suite 2202, 100 Southeast Third Avenue, Fort Lauderdale, FL 33394.

FEDERAL COMMUNICATIONS COMMISSION


Marlene H. Dortch
Secretary

## APPENDIX

| | Apparent Violations of Section 201(b) of the Act | |
|---|---|---|
| | **Complainant** | **Billing date** |
| 1. | E. Sakkal | 8/16/13 |
| 2. | M. Towfeles | 10/1/13 |
| 3. | A. Elgowainy | 11/4/13 |
| 4. | B. Hadeed | 12/27/13 |
| 5. | I. Birouty | 1/1/14 |
| 6. | L. Wilwerding | 1/8/14 |
| 7. | M. Bhatti | 1/17/14 |
| 8. | J. Chakkala | 1/26/14 |
| 9. | D. Foster | 2/1/14 |
| 10. | M. Karam | 2/1/14 |
| 11. | S. Tantawy | 2/1/14 |
| 12. | B. Gopalan | 2/7/14 |
| 13. | M. Ahmed | 3/1/14 |
| 14. | J. Geevarghese | 3/1/14 |
| 15. | T. Mattam | 3/1/14 |
| 16. | S. Batarseh | 4/1/14 |
| 17. | H. El-Nakhal | 4/1/14 |
| 18. | M. Haughton | 5/1/14 |
| 19. | D. Panapitiya | 5/1/14 |
| 20. | M. Sibay | 5/15/14 |

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

UNITED STATES OF AMERICA,

      Plaintiff,

v.                              CASE NO. _____

NET ONE INTERNATIONAL, INC.,

      Defendant,

_____/

## COMPLAINT

Exhibit 2

**Before the**
**Federal Communications Commission**
**Washington, DC 20554**

| | | |
|---|---|---|
| In the Matter of | ) | File No. EB-TCD-12-00000418 |
| | ) | |
| Net One International, Inc. | ) | NAL/Acct. No. 201432170010 |
| | ) | |
| Apparent Liability for Forfeiture | ) | FRN: 0004337556 |

**FORFEITURE ORDER**

Adopted: **March 8, 2016**                                    Released: **March 9, 2016**

By the Commission: Commissioner O'Rielly concurring in part, dissenting in part and issuing a statement.

## I.    INTRODUCTION

1.        We impose a penalty of $1,600,000 against Net One International, Inc. (Net One or Company), for improperly billing consumers for unauthorized charges and fees purportedly in connection with long distance telephone service—a practice commonly known as "cramming." Consumers complained that Net One continued to charge them for services and "late fees" after they had affirmatively cancelled their service and paid all final bills. Cramming is a deceptive business practice that results in consumers paying for services they never requested and expending time and personal effort to remedy the unauthorized charges. The Federal Communications Commission (Commission) is committed to protecting consumers against cramming and we will take aggressive action against carriers such as Net One that commit such unjust and unreasonable acts against consumers. After reviewing Net One's response to the July 11, 2014, Notice of Apparent Liability for Forfeiture (*2014 NAL*), we find no reason to cancel, withdraw, or reduce the proposed penalty, and we therefore assess the $1,600,000 forfeiture the Commission previously proposed.

## II.    BACKGROUND

2.        Net One is a toll reseller based in Florida[1] that offers interexchange and international telecommunications service.[2] The Enforcement Bureau (Bureau) reviewed over 100 consumer complaints filed against Net One with the Commission, Federal Trade Commission, and the Better Business Bureau. As discussed in more detail in the *2014 NAL*,[3] many consumers complained that Net One continued to bill them after they had paid their final bill and notified Net One that they were

---

[1] Net One has used several different Florida addresses during the course of this investigation: 6931 University Blvd., Winter Park, FL 32792 (annual CPNI filing); 4037 Metric Drive, Suite 200, Winter Park, FL 32792-6808 (annual CPNI filing); P.O. Box 4970, Winter Park, FL 32793 (FCC Form 499-A); 457 South Avalon Park Blvd., Suite 500, Orlando, FL 32828-6997 (FCC Form 499-A); and P.O. Box 863511, Orlando, FL 32886-3511 (consumer invoices).

[2] Net One was granted international Section 214 authority on July 3, 1997. *See* ITC-214-19970516-00273.

[3] *Net One International, Inc.*, Notice of Apparent Liability, 29 FCC Rcd 9046 (2014) (*2014 NAL*). The carrier's name is at times spelled "NetOne" in consumer complaints, and elsewhere, due to the way it appears on the Company's letterhead.

cancelling their accounts.[4]  Based on these complaints, on July 15, 2011, the Bureau sent a letter of inquiry (LOI) to Net One, ordering the Company to provide certain information and documents.[5]  The Bureau directed Net One to respond to the LOI on or before August 4, 2011.  Net One received and signed for the LOI on July 19, 2011,[6] but neither contacted the Bureau nor responded to the LOI by the deadline.  Consequently, on December 9, 2011, the Bureau released a Notice of Apparent Liability (*2011 NAL*), followed by a Forfeiture Order and Memorandum Opinion and Order, against Net One for its failure to provide a complete response to the LOI.[7]  Notwithstanding Net One's failure to provide the information requested in the LOI, the Bureau continued its investigation of Net One for cramming based on the numerous allegations from consumers that Net One had charged them for service and fees without their authorization.

3.       Subsequently, on July 15, 2014, the Commission issued the *2014 NAL* proposing a $1,600,000 forfeiture against Net One for its apparent willful and repeated violation of Section 201(b) of the Communications Act of 1934, as amended (Act),[8] by imposing unauthorized charges on 20 consumers' telephone bills.  The Commission has found that the inclusion of such unauthorized charges and fees on telephone bills, or cramming, is an "unjust and unreasonable" practice under Section 201(b) of the Act.[9]

4.       On September 12, 2014, Net One filed a response to the *2014 NAL*.[10]  Net One makes a number of arguments as to why the *2014 NAL* should be canceled, claiming:  the *2014 NAL* fails to provide substantial evidence to support a finding of cramming;[11] the Commission's actions were arbitrary

---

[4] *See 2014 NAL*, 29 FCC Rcd at 9048-9050, para. 6.

[5] *See* Letter from Richard A. Hindman, Chief, Telecommunications Consumers Division, FCC Enforcement Bureau, to Net One International (July 15, 2011) (on file in EB-TCD-12-00000418).

[6] The Winter Park, Florida, post office stamped the return receipt card on July 19, 2011.  The card was apparently signed by El Bachir Alaoui Hichami, the Treasurer of Net One.

[7] *Net One International, et al.*, Notice of Apparent Liability for Forfeiture and Order, 26 FCC Rcd 16493 (EB 2011) (*2011 NAL*), Order of Forfeiture, 29 FCC Rcd 264 (EB 2014), *petition for reconsideration denied*, Memorandum Opinion and Order, 30 FCC Rcd 1021 (EB 2015).

[8] 47 U.S.C. § 201(b).

[9] *See, e.g.*, *Long Distance Direct, Inc., Apparent Liability for Forfeiture*, Memorandum Opinion and Order, 15 FCC Rcd 3297, 3302, para. 14 (2000) (*LDDI MO&O*) (finding that the company's practice of cramming membership and other unauthorized fees on consumer telephone bills was an unjust and unreasonable practice in connection with communication services); *Optic Internet Protocol, Inc.*, Notice of Apparent Liability for Forfeiture, 29 FCC Rcd 9056, 9058, para. 7 (*Optic NAL*), Forfeiture Order, 30 FCC Rcd 2539 (2015); *Central Telecom Long Distance, Inc.*, Notice of Apparent Liability for Forfeiture, 29 FCC Rcd 5517, 5523, para. 14 (2014) (*Central NAL*); *U.S. Telecom Long Distance, Inc.*, Notice of Apparent Liability for Forfeiture, 29 FCC Rcd 823, 829-830, para. 14 (2014) (*USTLD NAL*); *Consumer Telcom, Inc.*, Notice of Apparent Liability for Forfeiture, 28 FCC Rcd 17196, 17202, para. 14 (2013) (*CTI NAL*); *Advantage Telecommunications Corp.*, Notice of Apparent Liability for Forfeiture, 28 FCC Rcd 6843, 6849-6850, para. 17 (2013) (*Advantage NAL*).

[10] *See* "Response to Notice of Apparent Liability for Forfeiture," dated September 11, 2014, and received September 12, 2014 (NAL Response).

[11] *Id.* at 4-13.

and capricious;[12] and the proposed forfeiture violates public policy and would be a financial hardship for the Company.[13]

## III.   DISCUSSION

5.      The Commission proposed a forfeiture in this case in accordance with Section 503(b) of the Act,[14] Section 1.80 of the Commission's rules,[15] and the Commission's *Forfeiture Policy Statement*.[16] When we assess forfeitures, Section 503(b)(2)(E) requires that we take into account the "nature, circumstances, extent, and gravity of the violation and, with respect to the violator, the degree of culpability, any history of prior offenses, ability to pay, and such other matters as justice may require."[17] As discussed below, we have fully considered Net One's response to the *2014 NAL*, which includes a variety of legal and factual arguments, but we find none of them persuasive. We therefore affirm the $1,600,000 forfeiture proposed in the *2014 NAL*.

6.      As stated in the *2014 NAL*, during the course of its investigation, the Bureau reviewed over 100 consumer complaints in which consumers alleged, among other things, that Net One had billed them after they had cancelled their service and paid their final bills.[18] The complaints upon which we based the *2014 NAL* had been filed with the Commission and/or the Better Business Bureau and had been served on Net One.[19]

7.      As discussed in more detail below, Net One's NAL Response makes a number of arguments. Four of those arguments address four separate groups of complaints:

- For the first group,[20] Net One contends that the *2014 NAL* failed to consider that the charges were in error and that Net One corrected the errors after it became aware of them, and accordingly we should not assess a forfeiture based on those charges. We reject Net One's argument because the facts show that the Company did not correct the errors after it was initially contacted by the consumers; instead, this group of complainants had to repeatedly notify Net One over an extended period of time before the Company finally refunded the illegal fees these complainants were charged.

- For the second group of complainants,[21] Net One claims that its charges were not unjust and unreasonable, and argues that the Commission did not recognize that the complainants had an outstanding balance when they cancelled their service or made their final payment late. We reject this argument as well because the uncontradicted facts

---

[12] *Id.* at 13-15.

[13] *Id.* at 13-17.

[14] 47 U.S.C. § 503(b).

[15] 47 CFR § 1.80.

[16] *The Commission's Forfeiture Policy Statement and Amendment of Section 1.80 of the Rules to Incorporate the Forfeiture Guidelines*, Report and Order, 12 FCC Rcd 17087 (1997) (*Forfeiture Policy Statement*), *reconsideration denied*, Memorandum Opinion and Order, 15 FCC Rcd 303 (1999).

[17] 47 U.S.C. § 503(b)(2)(E).

[18] *NAL*, 29 FCC Rcd at 9048–9050, para. 6.

[19] In some cases, Net One had responded to consumer complaints; however, in most cases the Company did not.

[20] Complainants Gopalan, Tantawy, Foster, El-Nakhal, and Karam.

[21] Complainants Mattam, Haughton, Hadeed, Chakkala, Towfeles, and Sibay.

show that Net One did not merely charge the complainants the alleged delinquent amount, or a late fee, but also refused to cancel the consumers' accounts and continued to bill them monthly for unauthorized services as well as for additional late fees.

- For a third group of complaints,[22] Net One claims that it is unaware of any specifics about such complaints and for that reason we should not assess a forfeiture. We reject this argument, as Net One was served with these complaints, the complainants were Net One customers, and Net One possessed records of all invoices it sent them and of the numerous times these complainants contacted Net One's customer service representatives.

- For the final group of complainants,[23] Net One claims that it cannot identify any customer account because the NAL only provided complainant's names and not their billing telephone number. We reject this claim; all the consumer complaints, which contained the consumers' addresses and telephone numbers, were served on Net One. Additionally, Net One should have records of all interactions between the complainants and the customer service representatives. Accordingly, Net One was on actual notice of each consumer complaint listed in the *2014 NAL*.

The Company's fifth argument is that its actions were not shown to be willful. As we discuss below, the repeated attempts by consumers to resolve Net One's unauthorized charges by contacting Net One's customer service representatives and filing complaints show that Net One had been on notice for several years of the cramming allegations and nonetheless continued to include unauthorized charges on consumers' bills. Finally, Net One states that imposition of the forfeiture proposed in the *2014 NAL* is against public policy and will impose a financial hardship on the Company. We reject all of these arguments for the reasons explained below.

### A. Net One Violated Section 201(b) by Continuing to Charge Complainants in Group One After Becoming Aware of its Error

8.      Net One argues that the *2014 NAL* was in violation of the Administrative Procedure Act (APA) because it relies on an incomplete factual record.[24] Specifically, Net One contends the *2014 NAL* should have acknowledged that five of the complainants[25] received credits or refunds after Net One became "aware of the error in the billing system."[26] Net One explains that despite its efforts to "retain a third-party provider [to handle its billing] with the highest credentials in the industry for accuracy, there were several occurrences where . . . several of its thousands of customers were billed erroneously."[27] Regardless of whether, as Net One contends, it eventually issued refunds to these five complainants or credited them before the release date of the *2014 NAL*, the fact that Net One billed the consumers for unauthorized charges or fees is uncontradicted. Further, to the extent that the Company did refund or provide credits to these consumers, these consumers were only given those credits or refunds after they

---

[22] Complainants Sakkal, Wilwerding, Geevarghese, Batarseh, and Panapitiya.

[23] Complainants Elgowainy, Birouty, Bhatti, and Ahmed.

[24] NAL Response at 4–5.

[25] These complainants are: Gopalan, Tantawy, Foster, El-Nakhal, and Karam.

[26] NAL Response at 8.

[27] *Id.* at 9.

spent much effort and time trying, to no avail, to resolve these illegal charges with Net One. Ultimately, no corrective action was taken by Net One until these consumers filed complaints.[28]

9.      For example, Net One contends in the NAL Response that it "refunded $87.39 via check to Complainant [Gopalan] on January 5, 2012."[29]  This refund, discussed in the NAL Response, occurred a year *before* the unauthorized account in question was opened by Net One and does not refute the allegations in Mr. Gopalan's complaint. Mr. Gopalan did not authorize the creation of this Net One account, and he received bills for this unauthorized account on January 10, 2013, and February 7, 2013.[30] As we discussed in the *2014 NAL*, we find that these unauthorized charges constitute instances of cramming.

10.     Next, Net One claims that the Commission should not have included Complainant Tantawy in calculating the forfeiture amount because the Company erroneously billed him due to "an error in the third-party billing system," and when it "became aware of the error, it issued a credit (in full)" on April 24, 2014, in the amount of $254.20.[31]  Net One omits the fact that the refund it claims it made when it "became aware of the error" was actually made a year after Mr. Tantawy filed his first complaint with the Commission, and over a year after he repeatedly contacted Net One about its erroneous billing.[32] Further, as Mr. Tantawy explained, "[t]hey have been claiming they [cannot] stop the computer from sending bills unless I pay ½ of the amount [] they have been billing me. I refused to pay any money for unauthorized billing."[33]  Net One's bald assertion that the refund was made when it "became aware of the error" is refuted by the facts in the record.

11.     Net One claims that we should also exclude the Foster complaint because it provided Ms. Foster with a credit on January 8, 2014, when it "became aware of the error";[34] yet the record shows that Ms. Foster had complained to Net One repeatedly since February 12, 2013.[35] Ms. Foster called Net One and sent two certified letters as well as e-mails to the company notifying them that she had cancelled the service on February 12, 2013, and that she had paid her account in full and did not owe anything further.[36] Again, Net One's contention that it provided the refund when it "became aware of the error" is inconsistent with the facts.

---

[28] Net One contends that complainants Gopalan, Tantawy, Foster, El-Nakhal, and Karam (erroneously listed as "Sadie" in the NAL Response) were in this category of consumers who were billed erroneously by the third-party and later credited or refunded.

[29] NAL Response at 9.

[30] Complaint from B. Gopalan.

[31] NAL Response at 9-10.

[32] Mr. Tantawy states that he "talked with [Net One] over 10 times" when trying to stop the unauthorized billing. *See* E-mail from S. Tantawy to Mika Savir, Telecommunications Consumers Division, FCC Enforcement Bureau (Mar. 3, 2014, 3:15 PM).  Mr. Tantawy provided bills dated April 30, 2013, and February 1, 2014, with his complaint and e-mail correspondence. The February 1, 2014, bill was for $224.22.

[33] *See* E-mail from S. Tantawy to Mika Savir, Telecommunications Consumers Division, FCC Enforcement Bureau (Mar. 3, 2014, 3:15 PM).

[34] NAL Response at 10.

[35] Complaint from D. Foster.

[36] *Id.*

12.     Net One next argues that it sent invoices to Complainant El-Nakhal only until the company "confirmed its mistake" and provided a credit on May 7, 2014.[37] The record, however, shows that Complainant El-Nakhal cancelled his service, paid the final Net One bill on April 18, 2013, and then called Net One every month to complain about Net One's continuing to bill him for unauthorized charges.[38] Complainant El-Nakhal filed a complaint with the Commission on May 9, 2013, and a complaint with the Better Business Bureau on December 12, 2013.[39] Despite the numerous telephone calls and the two filed complaints, Net One did not provide a credit until over a year after Mr. El-Nakhal cancelled its service.

13.     Finally, Net One contends that we should not include Complainant Karam (referred to by Net One as Complainant Sadie) because it erroneously charged him and, when it "became aware of the error," it issued him a credit on April 29, 2014.[40] The record shows, however, that Mr. Karam called Net One repeatedly but nevertheless continued to receive bills with late fees.[41] He then filed a complaint with the Commission on February 10, 2014, eight months after he had cancelled his Net One account;[42] yet Net One failed to issue a credit until almost a year after the cancellation, when the company claims it "became aware of the error."[43]

14.     We accordingly reject Net One's argument that the Commission failed to consider all of the evidence in the record in the *2014 NAL*. Net One's allegation that we erred by including the five complainants discussed above, instead of determining that Net One provided credits "upon becoming aware of the error in the billing system," is not supported by the record. Instead, the evidence shows that these complainants repeatedly contacted Net One about the unauthorized charges and after Net One continued to bill these complainants and refused to correct its unauthorized charges, the complainants were forced to file complaints to obtain refunds. Based on the record, we affirm the finding in the *2014 NAL* that the charges Net One imposed on these consumers were unauthorized and in violation of Section 201(b) of the Act.

**B.     Net One Violated Section 201(b) by Continuing to Assess Unauthorized Charges on Complainants in Group Two**

15.     Net One contends that the *2014 NAL* failed to consider the "substantial evidence" that six of the complainants[44] had delinquent balances and thus the Net One charges were not unauthorized.[45] Specifically, Net One argues that the charges it assessed against Complainant Mattam were not unauthorized because, when Mr. Mattam cancelled the service, he had a "delinquent balance of $25.49, against which Complainant paid $15.49 after the due date."[46] Net One claims that it "issued a good faith credit in the amount of $10.00 before the statement cut-off date. As a result of Complainant's failure to

---

[37] NAL Response at 10.

[38] Complaint from H. El-Nakhal

[39] *Id.* Net One did not submit a response to either complaint.

[40] NAL Response at 10-11.

[41] Complaint from M. Karam.

[42] *Id.*

[43] NAL Response at 11.

[44] These complainants are: Mattam, Haughton, Hadeed, Chakkala, Towfeles, and Sibay.

[45] *Id.*

[46] NAL Response at 6.

remit the balance due on the account on or before the due date, additional late charges were assessed."[47] The evidence shows otherwise. The invoices attached as Net One's Exhibit 1 and the invoices provided by Mr. Mattam do not corroborate Net One's contention that the only fee in question was a fee the Company assessed for a late payment.[48] According to Complainant Mattam, despite his repeated telephone calls to Net One after he had cancelled his account, the Company continued to bill him each month for monthly service charges, regulatory fees, late fees, taxes, and surcharges.[49] Although Net One now contends that the August 2013 payment was one day late, and therefore a $10.00 late fee was justified,[50] the invoices Net One sent to Mr. Mattam were not only for the alleged "late fee" but also included new monthly service charges, regulatory fees, taxes, and surcharges, i.e., Net One was continuing to bill Mr. Mattam as if he had not closed his account.[51] These recurring monthly charges were unauthorized. Mr. Mattam stated in his complaint:

> I have called on various occasions to cancel our services with NetOne for close to one year. After speaking to their representatives, it would seem as if my service has been ended, however, I am still being billed by this company every single month. Not only are we still being charged for a service that we have cancelled, we are still being charged administrative fees, including late fees and printing fees.[52]

We therefore find that Net One has failed to show that the charges for which it continued to bill Mr. Mattam after he closed his account in August 2013 were authorized.

16.        Similarly, Net One's arguments with respect to Complainants Haughton, Hadeed,[53] Chakkala, Towfeles, and Sibay[54] do not refute the evidence in the complaints that the bills were unauthorized. In all of these cases, the consumers tried to close their Net One accounts, yet Net One continued to bill them monthly for taxes, a "Regulatory Cost Recovery Fee," and "Additional Charges."[55] As Net One refused to close the accounts, the late charges, as well as these other recurring fees for services and charges it illegally assessed, continued to accumulate. In some cases, this snowballing of charges was initiated by a final payment that Net One claimed was late.[56] For example, Complainant Towfeles paid her final bill of $4.13 to close her account on January 22, 2013, which Net One contended

---

[47] *Id.* According to Net One, Complainant Mattam paid the invoice one day late. *Id.* at Exhibit 1.

[48] *Id.* at Exhibit 1.

[49] Complaint from T. Mattam.

[50] NAL Response at Exhibit 1.

[51] *See* invoices attached to Mr. Mattam's complaint (the March 1, 2014 invoice has charges for "Monthly," "Regulatory Fees," as well as a past due balance and "Late Fees").

[52] Complaint from T. Mattam.

[53] Net One claims that it is "unaware of the specifics pertaining to any alleged wrongdoing either by Complainant or the Commission" regarding the Hadeed complaint, yet the company submitted a response to Hadeed complaint to the Better Business Bureau on March 4, 2014. *See* Complaint from B. Hadeed (on file in EB-TCD-12-00000418).

[54] Net One claims that it is "unaware of the specifics pertaining to any alleged wrongdoing either by Complainant or the Commission" regarding the Sibay complaint, yet the company was served with Ms. Sibay's informal complaint on June 4, 2014. As we mentioned above, Net One was served with the Commission and Better Business Bureau complaints.

[55] *See, e.g.,* Complaint from M. Sibay (attached invoice dated May 1, 2014, contains charges for a "Previous Balance," "Monthly," "Regulatory Fees," "Late Fees," and "Taxes and Surcharges").

[56] *See, e.g.,* Complaint from M. Towfeles.

was one week late.[57]  Despite the fact that she had closed the account and paid the final bill, Net One did not close the account and instead continued to charge Complainant Towfeles monthly service charges, regulatory fees, taxes, and late fees every month until the balance reached $120.07.[58]  Ms. Towfeles explained, "we are still liable for the charges and [they] kept threatening [to] send[] account to collection despite the fact that their account show[s] that we paid the full balance [of $4.13] in January 2013."[59]  For example, Ms. Towfeles' October 1, 2013 bill from Net One includes charges for "Monthly" service fees, "Regulatory Fees," "Late Fees," and "Taxes and Surcharges," as well as a "Balance Forward."[60]  Despite Ms. Towfeles' numerous telephone calls to Net One, the Company did not close out the account until after the *2014 NAL* was released.[61]

17.       Complainant Sibay's bills from Net One further demonstrate the egregious nature of Net One's conduct. Ms. Sibay was a prepaid customer of Net One's until Net One, without her authorization or consent, began billing her as a monthly postpaid customer instead.[62]  Despite numerous telephone calls to Net One, she continued to receive monthly bills for a postpaid service she had never authorized or requested.  As she explained, "They continue adding more amounts to a bill for services that I did not ask for and I have asked . . . to stop or cancel whatever services they think they are offering me."[63]  Ms. Sibay's May 1, 2014, bill from Net One was for a "Previous Balance" of $294.98, along with a "Monthly" fee, "Regulatory Fee," "Late Fees," and "Taxes and Surcharges."[64]  Net One offers no explanation for why it changed a prepaid account to a postpaid account, why its customer service representatives refused to assist Ms. Sibay when she called and wrote to the company seeking help, or how its May 1, 2014, charges of $312.47 were authorized.  Instead, Net One contends that Ms. Sibay had a balance due of $0.36 after her last payment on October 11, 2012, and for that reason she "received a/an additional invoice(s)."[65]

18.       We conclude that the evidence in the record, including the Exhibits attached to Net One's NAL Response, shows conclusively that Net One refused to cancel these consumers' accounts after their repeated requests, and instead continued to bill them for unauthorized monthly service charges and fees.[66]  We therefore affirm the findings in the *2014 NAL* that the charges Net One imposed on these consumers were unauthorized and in violation of Section 201(b) of the Act.

---

[57] NAL Response at Exhibit 5.  Net One gave her a credit for $10.54, the total invoice amount was $14.67.

[58] Complaint from M. Towfeles.

[59] *Id.*

[60] *Id.*

[61] NAL Response at Exhibit 5.

[62] Complaint from M. Sibay.

[63] *Id.*

[64] *Id.*

[65] NAL Response at 8.

[66] The Haughton complaint is similar to the Mattam complaint in that the final payment, to close the account, was "late."  According to Net One, Complainants Hadeed and Chakkala had not paid their final bills in full.  In all of these complaints, however, Net One did not merely bill the consumers for what it claimed it was owed (a late charge or the balance due after the final payment) but instead refused to close the accounts and continued to bill for monthly recurring charges for the Net One service, including ever-increasing late fees.

**C.** **Net One Violated Section 201(b) by Continuing to Assess Unauthorized Charges on Complainants in Group Three**

19.     Net One contends that it is unaware of any specifics regarding Complainants Sakkal, Wilwerding, Geevarghese, Batarseh, and Panapitiya, and therefore the Commission must cancel the forfeiture amounts pertaining to these complaints.[67] Net One provided no more information or arguments concerning these complainants, and, as described below, we are not persuaded by this argument because the record and evidence provided by each complainant shows that each complainant had contacted Net One numerous times about the unauthorized charges and filed complaints against the Company.

20.     Complainant Sakkal filed a complaint with the Better Business Bureau on July 3, 2013, and attached Net One's invoices to his complaint.[68] Mr. Sakkal contended that Net One failed to provide service so he called customer relations to cancel, but instead of cancelling his service, as he had requested, Net One sent him another bill and continued to bill him monthly.[69]

21.     Complainant Wilwerding also filed a complaint with the Better Business Bureau, contending that she cancelled her service with Net One, but the Company refused to close her account and instead continued sending her bills.[70] She explains, "They will not cancel. When I call they say that the office is closed that day, or someone will call back in 4 hours, etc. None of these things ever happen, just bills are sent."[71]

22.     Complainant Geevarghese filed a complaint with the Commission on November 8, 2013. At one time Mr. Geevarghese was a Net One customer; however, the Company continued to bill him after he cancelled his service.[72] As he explained,

> Net One International disconnected the service and keeps billing me and refuses to stop billing me. The company employees have called me [a] few times and threatened me by saying if I don't pay the bill they are going to [have the account] sent to [a] collection agency and I demanded an explanation for the bill and requested to talk to someone in Management. No one from management has contacted me so far but every month I keep getting new bill[s] with added charges . . . . I have paid my bills on time for the time frame I used their service but I do [not] want to pay for service that was not provided to me.[73]

23.     Complainant Batarseh filed a complaint with the Commission on May 8, 2014, attaching Net One's invoices.[74] Mr. Batarseh had overpaid Net One, resulting in a credit on his account.[75] However, when he cancelled his service on December 17, 2013, Net One refused to refund the

---

[67] NAL Response at 11.

[68] Complaint from E. Sakkal. The Better Business Bureau complaint listed Net One's address under "Business Info" and tried to notify Net One about the complaint on July 5, 2013 and July 22, 2013, but did not receive a response from Net One.

[69] Complaint from E. Sakkal.

[70] Complaint from L. Wilwerding.

[71] *Id.*

[72] Complaint from J. Geevarghese.

[73] *Id.*

[74] Complaint from S. Batarseh.

[75] *Id.*

overpayment.[76] He explained, "NetOne International was still charging me [for monthly] service for the past 5 months using the credit balance on my account . . . . When I speak to NetOne, . . . they are refusing to pay me what was a credit balance on my account. I am only asking to get my own money back. . . . This has been going on for months now and . . . they are still charging me monthly service fees and claiming I am late in paying them."[77]

24.      Complainant Panapitiya filed a complaint with the Better Business Bureau, to which Net One customer service manager W. Quttaineh responded on May 26, 2014.[78] Mr. Panapitiya contended that he had repeatedly asked Net One to cancel his account but instead Net One sent him monthly bills for service and late fees.[79]

25.      Despite Net One's claim that it was "unaware of the specifics pertaining to any alleged wrongdoing,"[80] these five complaints were served[81] on Net One and Net One had sent bills to these complainants. We find that the evidence in the consumer complaints is credible and uncontradicted, and accordingly we affirm the findings in the *2014 NAL* that the charges imposed by Net One were unauthorized in violation of Section 201(b) of the Act.

### D.      Net One Violated Section 201(b) by Continuing to Assess Unauthorized Charges on Complainants in Group Four

26.      Net One contends that for Complainants Elgowainy, Birouty, Bhatti, and Ahmed, it "cannot identify any account based on information provided by the Commission."[82] For this reason, Net One states that it "reserves the right to supplement" the NAL Response after it can identify the consumer accounts.[83] Net One has not, however, provided any supplementary information regarding these complainants. Not only did Net One fail to rebut these consumers' allegations, the evidence in the record supports the finding in the *2014 NAL* that Net One had assessed charges on these consumers that were not authorized.

27.      Complainant Elgowainy filed a complaint with the Better Business Bureau on November 4, 2013.[84] Mr. Elgowainy was offered a pre-paid international calling plan by Net One, with a 14-day money back guarantee if the customer was not satisfied for any reason.[85] Because the plan turned out to be more expensive than he anticipated, Mr. Elgowainy tried to cancel the Net One plan the following day

---

[76] *Id.*

[77] *Id.*

[78] Complaint from D. Panapitiya.

[79] *Id.*

[80] NAL Response at 11.

[81] Complaints filed with the Commission are served on the carrier by the Consumer & Governmental Affairs Bureau. BBB complaints are also sent to the company and Net One's response is noted in the BBB complaint. *See, e.g.*, Complaint from D. Panapitiya.

[82] *Id.*

[83] NAL Response at 12.

[84] *See 2014 NAL*, 29 FCC Rcd at 9049, para. 6.

[85] Complaint from A. Elgowainy.

**Federal Communications Commission**                    **FCC 16-27**

and have his money refunded, but his request to cancel was refused by Net One because, according to Net One, it was "not a good reason to cancel."[86]

28.    Complainant Birouty filed a complaint with the Commission on November 14, 2013.[87] He explains that initially, on September 16, 2013, "I told them to cancel my parents['] account. [I] talked to a gentleman who told me there is an outstanding balance of $15.02 that must be paid before closing the account . . . . I told him I will pay it, but to close the account. He said . . . as soon as they receive my payment they will close the account. I sent in the payment the same day."[88] One month later Mr. Birouty "received a bill from NetOne that showed my payment was received in full and they did not close my account, but rather they levied another $10 late fee."[89] He called Net One customer service to ask why the account was not closed, and the customer service representative "said that my account cannot be closed because it has an outstanding balance that I have to pay."[90] The Net One representative told Mr. Birouty that she could not close his account because only [Mr.] Ghani is authorized to close accounts. On October 24, 2013, Mr. Birouty spoke with Mr. Ghani, who "would not close that account [but] . . . said he would remove all charges and I would receive a $0 [invoice] now and for every month and would only ever get billed if we used the [service]." Despite the fact that Mr. Ghani assured Mr. Birouty that the balance was "$0" and he would be charged only if they resumed using the service, Net One billed him an additional $30.15.[91]

29.    Complainant Bhatti filed a complaint with the Commission on January 17, 2014.[92] Mr. Bhatti contended that he tried to cancel his Net One service in September 2013 because he subscribed to AT&T and no longer needed Net One.[93] He tried repeatedly to cancel his service with Net One but explained that "Net One states they cannot cancel [my] service."[94] The bill from Net One, dated March 1, 2014, shows that notwithstanding Mr. Bhatti's attempts to cancel Net One's service for several months, the Company was charging Mr. Bhatti for a "Previous Balance," "Monthly" service charge, "Regulatory Fees," "Late Fees," and "Taxes and Surcharges."[95]

30.    Complainant Ahmed filed his complaint with the Commission on September 16, 2013.[96] Mr. Ahmed tried to cancel his Net One account in January 2013.[97] Mr. Ahmed repeatedly called Net

---

[86] *Id.* Net One charged Mr. Elgowainy $54.20 and refused to refund this amount despite his requests to cancel and the fact that he did not use Net One's services. *Id.*

[87] Complaint from I. Birouty.

[88] *Id.*

[89] *Id.*

[90] *Id.*

[91] Complaint from I. Birouty. The Net One bill sent after Mr. Ghani assured Mr. Birouty that the balance was "$0" included charges for "Monthly" service, "Regulatory Fees," "Late Fees," and "Taxes and Surcharges." *Id.* The same recurring charges were in subsequent bills as well.

[92] *See 2014 NAL*, 29 FCC Rcd at 9048, para. 6.

[93] Complaint from M. Bhatti.

[94] *Id.*

[95] *Id.*

[96] *See 2014 NAL*, 29 FCC Rcd at 9048, para. 6.

[97] Complaint from M. Ahmed.

One's customer service to cancel his account.[98]  Nevertheless, Net One continued to bill Mr. Ahmed monthly, claiming that they could not cancel his account because they could not access his "account information."[99]  Finally, Net One agreed to stop billing him if he would pay an additional $10.99.[100]  Mr. Ahmed explains that "the customer agent asked me to pay $10.99 and that would stop billing statements.  I paid the amount at the time but the monthly billing never stopped . . . . [N]ow they want me to [pay] $25.00 including $10.00 of late fee charges[;] otherwise they would send the bill to [a] collection agency."[101]

31.     Despite Net One's contention that it cannot identify the complainants' accounts, we have reviewed the Net One invoices attached to the complaints and the evidence shows that Net One charged these consumers for "Monthly" service charges, "Regulatory Fees," "Late Fees," and "Taxes and Surcharges" even though they had attempted repeatedly to cancel their accounts.[102]  Fourteen months after Mr. Ahmed had cancelled his Net One account, for instance, Net One was still charging him a monthly fee for its service, as well as monthly regulatory fees and taxes.[103]  Although Net One claims that he and other complainants "do not appear in Respondent's customer service database,"[104] in fact Net One was charging these complainants for service and copies of the Net One invoices are attached to the consumer complaints.  In addition, all the complainants discussed in the *2014 NAL* contacted Net One's customer service department numerous times to try to stop the unauthorized billing.  We therefore conclude, based on the record, that Net One assessed unauthorized charges on these consumers in violation of Section 201(b) of the Act.

E.     **Net One's Unauthorized Billing of Consumers was Willful**

32.     Finally, Net One contends that its conduct was not willful because it had no "conscious and deliberate knowledge."[105]  We disagree.  The controlling definition of "willful" in this case is found in the Communications Act, which defines it as "the conscious and deliberate commission or omission of [an] act, irrespective of any intent to violate" the law.[106]  The repeated attempts by consumers to resolve Net One's unauthorized charges by contacting Net One's customer service representatives and filing complaints[107] show that Net One had been on notice for several years of the cramming allegations.  Nonetheless Net One continued to include unauthorized charges on consumers' bills and failed to resolve consumers' complaints.  Net One asserts that the Commission failed to "proffer substantial evidence in support of its findings" of willful violations, but this is not the case.  Indeed, the consumer complaints and attached invoices from Net One and the invoices that Net One provided together with the NAL Response are substantial evidence that Net One assessed unauthorized charges on consumers.

---

[98] *Id.*

[99] *Id.*

[100] *Id.*

[101] *Id.*

[102] *See id.*; Complaint from M. Bhatti.

[103] *See* Complaint from M. Ahmed.

[104] NAL Response at 11.

[105] *Id.* at 12.

[106] 47 U.S.C. § 312(f)(1).

[107] The Bureau reviewed over 100 consumer complaints; the *2014 NAL* was based on the most recent 20 complaints.

33.     Net One's arguments set forth in the NAL Response are not mitigating evidence weighing against finding of a willful violation, as Net One claims.[108] Instead, Net One's explanations for these charges contained in the NAL Response underscore the egregious nature of the Company's actions. For example, Net One claims in the NAL Response that "upon becoming aware of the error in the billing system" it refunded overcharges to five consumers; however, according to Net One's own records, the refunds took place many months after the consumers had unsuccessfully contacted Net One to resolve the unauthorized charges and then resorted to filing complaints after Net One refused to provide refunds to them. In addition, Net One contends that the *2014 NAL* is not based on "substantial evidence" because certain complainants had made late or incomplete financial payments, yet Net One's own records show that the crammed charges were not limited to a delinquent amount or a late fee but that Net One was billing them for recurring service charges and fees months after the consumers had tried to cancel their accounts with the Company. We find that the evidence is overwhelming that Net One crammed the 20 consumers listed in the *2014 NAL* and that this cramming was willful.

**F.     The Forfeiture Amount is Appropriate**

34.     Net One argues that the forfeiture amount violates public policy because it "did not knowingly, willfully or repeatedly engage in cramming;" it filed a response to the *2011 NAL*; it is not in "red light" status;[109] prior to the *2011 NAL* and the *2014 NAL* at issue here it had never before been the subject of an NAL; it refunded the money at issue prior to release of the *2014 NAL*; and it has implemented remedial measures.[110] We reject these arguments. As discussed above and in the *2014 NAL*, the Bureau reviewed over 100 consumer complaints filed against Net One alleging unauthorized charges.[111] The 20 complaints that resulted in the *2014 NAL* all arose from substantiated unauthorized charges imposed after the Bureau had issued the first NAL against Net One in 2011. Net One's conduct was unjust and unreasonable and we find that imposing an upward adjustment in addition to the base forfeiture amount is consistent with public policy.

35.     The Commission has established a $40,000 base forfeiture for cramming violations.[112] In the *2014 NAL*, the Commission explained that applying the $40,000 base forfeiture to each of the 20 cramming violations[113] would result in a forfeiture of $800,000 and that an upward adjustment was warranted. As the Commission reiterated in the *Central NAL*, "we may propose more significant forfeitures in the future as high as necessary, within the range of our statutory authority, to ensure that

---

[108] NAL Response at 15. Net One contends that our failure to consider these "mitigating factors" is arbitrary and capricious. On the contrary, we find that Net One's evidence is not mitigating but supports the Commission's conclusion that Net One engaged in cramming.

[109] Entities or individuals seeking licenses or other benefits from the FCC that are delinquent in debt owed to the Commission are placed in "red light" status until the delinquency is paid.

[110] NAL Response at 16-17.

[111] See NAL, 29 FCC Rcd at 9046-47, para. 3

[112] See LDDI MO&O, 15 FCC Rcd at 3304, para. 19 (affirming the $40,000 penalty for cramming imposed by the Commission in the forfeiture order); Central NAL. 29 FCC Rcd at 5529, para. 25; USTLD NAL, 29 FCC Rcd at 835, para. 24; CTI NAL, 28 FCC Rcd at 17207, para. 26.

[113] The Commission has made clear that each unauthorized charge a carrier places on a consumer's bill—or "crams"—constitutes a separate and distinct violation of Section 201(b). See CTI NAL, 28 FCC Rcd at 17208, n.79 (citing NOS Communications, Inc., Notice of Apparent Liability for Forfeiture, 16 FCC Rcd 1833 (2001)); Central NAL, 29 FCC Rcd at 5529, para 25 n.84 (same); USTLD NAL, 29 FCC Rcd at 835, para. 24 n.94 (same). Based on the record in the instant case, we decline to exercise our discretion in that way at this time. Rather, we apply an upward adjustment to the proposed forfeiture amount to take into account these additional violations.

such companies do not charge consumers for unauthorized services."[114] We find that, based on the record, Net One engaged in cramming repeatedly, including placing unauthorized charges on consumers' telephone bills multiple times. As we discussed in the *2014 NAL*, the Bureau began this cramming investigation in 2011, yet Net One has continued to engage in the same conduct—imposing unauthorized charges on consumers' bills and preventing consumers from closing their accounts.

36.    Under Section 503, we may take into account the egregious and repeated nature of Net One's actions and, consistent with our recent enforcement actions,[115] upwardly adjust the proposed forfeiture for its apparent cramming violations.[116] Given the egregious circumstances here and the extent of Net One's improper conduct and the longstanding nature of Net One's cramming practices, all in the face of the repeated warnings of the Commission that cramming would not be tolerated, we affirm the conclusion in the *2014 NAL* that an upward adjustment is appropriate here.

37.    Net One contends, however, that the payment of a $1,600,000 forfeiture would be a financial hardship.[117] Net One argues that it is a small company with a single office and fewer than ten employees.[118] Upon review of Net One's financial information, and the totality of the circumstances presented here, we decline to reduce the forfeiture amount. Section 503(b)(2)(B) of the Act empowers the Commission to assess a forfeiture of up to $150,000 for each willful or repeated violation in this case of the Act or of any rule, regulation, or order issued by the Commission under the Act.[119] In exercising our forfeiture authority, we are required to take into account "the nature, circumstances, extent, and gravity of the violation and, with respect to the violator, the degree of culpability, any history of prior offenses, ability to pay, and such other matters as justice may require."[120]

---

[114] *Central NAL*, 29 FCC Rcd at 5531, para. 28 (citing *Main Street Telephone Co.*, Notice of Apparent Liability for Forfeiture, 26 FCC Rcd 8853, 8861, para. 24 (2011)); *see also USTLD NAL*, 29 FCC Rcd at 837, para. 27 (same); *CTI NAL*, 28 FCC Rcd at 17207, para. 29 (same).

[115] *See, e.g., Central NAL*, 29 FCC Rcd at 5531, para. 28; *USTLD NAL*, 29 FCC Rcd at 837, para. 27; *CTI NAL*, 28 FCC Rcd at 17207, para. 29; *Main Street Telephone Co.*, Notice of Apparent Liability for Forfeiture, 26 FCC Rcd 8853, 8861, para. 24 (2011); *VoiceNet Telephone, LLC*, Notice of Apparent Liability for Forfeiture, 26 FCC Rcd 8874, 8882, para. 24 (2011); *Cheap2Dial Telephone Co.*, Notice of Apparent Liability for Forfeiture, 26 FCC Rcd 8863, 8872, para. 25 (2011); *Norristown Telephone Co., LLC*, Notice of Apparent Liability for Forfeiture, 26 FCC Rcd 8844, 8851, para. 23 (2011).

[116] In the future we may also seek to revoke a carrier's authorization. *See CCN Revocation Order*, 13 FCC Rcd 13599 (1998) (revoking a company's operating authority under Section 214 for repeatedly slamming consumers).

[117] NAL Response at 15-16. Net One submitted three years of tax returns to support this claim.

[118] *Id.* at 15.

[119] 47 U.S.C. § 503(b)(2)(B); *see also* 47 CFR § 1.80(b)(2). The Federal Civil Penalties Inflation Adjustment Act of 1990, Pub. L. No. 101-410, 104 Stat. 890, as amended by the Debt Collection Improvement Act of 1996, Pub. L. No. 104-134, Sec. 31001, 110 Stat. 1321 (DCIA), requires the Commission to adjust its forfeiture penalties periodically for inflation. *See* 28 U.S.C. § 2461 note (4). The Commission most recently adjusted its penalties to account for inflation in 2013. *See Amendment of Section 1.80(b) of the Commission's Rules, Adjustment of Civil Monetary Penalties to Reflect Inflation*, 28 FCC Rcd 10785 (EB 2013); *see also Inflation Adjustment of Monetary Penalties*, 78 Fed. Reg. 49,370-01 (Aug. 14, 2013) (setting September 13, 2013, as the effective date for the increases). Because the DCIA specifies that any inflationary adjustment "shall apply only to violations that occur after the date the increase takes effect," however, we apply the forfeiture penalties in effect at the time the apparent violation took place. 28 U.S.C. § 2461 note (6).

[120] *See* 47 U.S.C. § 503(b)(2)(E); *see also Forfeiture Policy Statement*, 12 FCC Rcd at 17100-01, para. 27.

38.     With regard to an individual's or entity's inability to pay claim, the Commission has determined that, in general, gross income or revenues are the best indicator of an ability to pay a forfeiture.[121] However, a party's inability to pay is only one factor in our forfeiture calculation analysis, and is not dispositive in setting a forfeiture.[122] The other four factors are: (i) the nature, circumstances, extent, and gravity of the violation; (ii) the degree of culpability; (iii) any history of prior offenses; and (iv) such other matters as justice may require. With respect to the nature, circumstances, extent, and gravity of the violation and the degree of culpability, in particular, we have described the numerous consumer complaints against the Company for cramming. As discussed herein, Net One refused to allow consumers to cancel their accounts and continued to bill them for monthly service fees, regulatory fees, taxes, and other fees for many months after the consumers had paid their final bill and tried to close their accounts. Despite repeated telephone calls from consumers, Net One continued to send them additional bills for monthly service and accumulating late fees.

39.     We have previously rejected inability to pay claims in cases of repeated or otherwise egregious violations.[123] Given the record evidence here, we find that the egregious nature of Net One's conduct outweighs any inability to pay claim raised by Net One and that therefore, the record does not warrant any mitigation of the proposed forfeiture amount. Accordingly, after consideration of the entire record and the factors listed above, we find that forfeiture in the amount of $1,600,000 is warranted.

## IV.     CONCLUSION

40.     After considering the relevant statutory factors and the Commission's *Forfeiture Policy Statement*, we find that Net One is liable for the total forfeiture amount of $1,600,000. As explained in the *2014 NAL*, this total results from a $40,000 forfeiture for each of the 20 instances of cramming[124] which results in a forfeiture of $800,000, plus an upward adjustment of $800,000. We find that the undisputed evidence presented in the 20 complaints supports the forfeiture imposed.

## V.     ORDERING CLAUSES

41.     Accordingly, **IT IS ORDERED**, pursuant to Section 503(b) of the Communications Act of 1934, as amended,[125] and Section 1.80 of the Commission's rules,[126] that Net One International, Inc. **SHALL FORFEIT** to the United States government the sum of one million six hundred thousand dollars ($1,600,000) for willfully or repeatedly violating Section 201(b) of the Communications Act.

---

[121] *See Local Long Distance, Inc.*, Order of Forfeiture, 15 FCC Rcd 24385 (2000) (forfeiture not deemed excessive where it represented approximately 7.9 percent of the violator's gross revenues).

[122] *See* 47 U.S.C. § 503(b)(2)(E).

[123] *See, e.g., TV Max, Inc., et al.*, Forfeiture Order, 29 FCC Rcd 8648, 8661, para. 25 (2014) (noting that the Commission "has previously rejected inability to pay claims in cases of repeated or otherwise egregious violations"); *Whisler Fleurinor*, Forfeiture Order, 28 FCC Rcd 1087, 1090, para. 9 (EB 2013) (violator's demonstrated inability to pay outweighed by gravity of multiple intentional violations); *Kevin W. Bondy*, Forfeiture Order, 26 FCC Rcd 7840 (EB 2011) (holding that violator's repeated acts of malicious and intentional interference outweighed evidence concerning his ability to pay), *aff'd*, Memorandum Opinion and Order, 28 FCC Rcd 1170 (EB 2013), *aff'd*, Memorandum Opinion and Order, 28 FCC Rcd 16815 (EB 2013).

[124] Although the forfeiture guidelines do not provide a base forfeiture amount for cramming, we have established a base forfeiture of $40,000 for cramming violations. *See LDDI MO&O*, 15 FCC Rcd at 3304, para. 19 ("The imposition of charges on a telephone bill for 'services' the consumer has not authorized is sufficiently egregious to warrant a forfeiture in an amount equal to that for slamming.").

[125] 47 U.S.C. § 503(b).

[126] 47 CFR § 1.80.

15

42.    Payment of the forfeiture shall be made in the manner provided for in Section 1.80 of the Commission's rules within thirty (30) calendar days after the release date of this Forfeiture Order.[127] If the forfeiture is not paid within the period specified, the case may be referred to the United States Department of Justice for enforcement of the forfeiture pursuant to Section 504(a) of the Act.[128]

43.    Payment of the forfeiture must be made by check or similar instrument, wire transfer, or credit card, and must include the NAL/Account number and FRN referenced above. Net One International, Inc. shall send electronic notification of payment to Johnny Drake at johnny.drake@fcc.gov on the date said payment is made. Regardless of the form of payment, a completed FCC Form 159 (Remittance Advice) must be submitted.[129] When completing the FCC Form 159, enter the Account Number in block number 23A (call sign/other ID) and enter the letters "FORF" in block number 24A (payment type code). Below are additional instructions that should be followed based on the form of payment selected:

- Payment by check or money order must be made payable to the order of the Federal Communications Commission. Such payments (along with the completed Form 159) must be mailed to Federal Communications Commission, P.O. Box 979088, St. Louis, MO 63197-9000, or sent via overnight mail to U.S. Bank – Government Lockbox #979088, SL-MO-C2-GL, 1005 Convention Plaza, St. Louis, MO 63101.

- Payment by wire transfer must be made to ABA Number 021030004, receiving bank TREAS/NYC, and Account Number 27000001. To complete the wire transfer and ensure appropriate crediting of the wired funds, a completed Form 159 must be faxed to U.S. Bank at (314) 418-4232 on the same business day the wire transfer is initiated.

- Payment by credit card must be made by providing the required credit card information on FCC Form 159 and signing and dating the Form 159 to authorize the credit card payment. The completed Form 159 must then be mailed to Federal Communications Commission, P.O. Box 979088, St. Louis, MO 63197-9000, or sent via overnight mail to U.S. Bank – Government Lockbox #979088, SL-MO-C2-GL, 1005 Convention Plaza, St. Louis, MO 63101.

44.    Any request for full payment over time under an installment plan should be sent to: Chief Financial Officer—Financial Operations, Federal Communications Commission, 445 12th Street, SW, Room 1-A625, Washington, DC 20554.[130] Questions regarding payment procedures should be directed to the Financial Operations Group Help Desk by telephone, 1-877-480-3201, or by e-mail, ARINQUIRIES@fcc.gov.

---

[127] 47 CFR § 1.80.

[128] 47 U.S.C. § 504(a).

[129] An FCC Form 159 and detailed instructions for completing the form may be obtained at http://www.fcc.gov/Forms/Form159/159.pdf.

[130] See 47 CFR § 1.1914.

45.    **IT IS FURTHER ORDERED** that a copy of this Forfeiture Order shall be sent by first class mail and certified mail, return receipt requested, to Net One International, Inc.'s attorney, Lance J.M. Steinhart, P.C., 1725 Windward Concourse, Suite 150, Alpharetta, GA 30005.

FEDERAL COMMUNICATIONS COMMISSION

Marlene H. Dortch
Secretary

17

## STATEMENT OF COMMISSIONER MICHAEL O'RIELLY
## CONCURRING IN PART AND DISSENTING IN PART

*Re:*     *Net One International, Inc., File No. EB-TCD-12-00000418*

The evidence shows that Net One engaged in cramming and it is subject to an enforcement action in order to punish such conduct and deter future wrongdoing. At the same time, I disagree that the Commission should issue enforcement actions in the absence of rules. In this instance, the Commission relies solely on section 201 as the basis for this forfeiture order. In my view, the Commission should initiate a rulemaking proceeding to adopt comprehensive cramming rules. Therefore, it was comforting to learn at the recent hearing on Oversight of the FCC before the Senate Committee on Commerce, Science, and Transportation that all five Commissioners support conducting a rulemaking on cramming, and that accomplishing the task is simply a matter of resource prioritization. Taking the time to seek public comment and adopt comprehensive rules on a real problem that is actually impacting consumers is worth the effort to ensure that our actions are on solid substantive and legal footing.

Separately, I remain concerned about how enforcement penalties are calculated, particularly when a company has put forward evidence of an inability to pay. Imposing a $1.6 million fine for 20 complaints of cramming seems disproportionate to the offense, especially since some of the consumers ultimately were made whole. But the larger problem is how the inability to pay is merely a factor in deciding whether to reduce a proposed fine. If a company has demonstrated that it cannot pay a certain level of fine, then it makes little sense to stick with the original amount. That's about as useful as trying to get blood from a stone, especially from a company that is already subject to an enforcement penalty for a previous offense of the same nature. Revoking the carrier's authorization would be far a more effective solution, particularly to protect additional consumers from unauthorized charges should the company continue to engage in cramming in the meantime.

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

UNITED STATES OF AMERICA,

     Plaintiff,

v.                                                        CASE NO. _____

NET ONE INTERNATIONAL, INC.,

     Defendant,

_____/

<u>**COMPLAINT**</u>

Exhibit 3

# FEDERAL COMMUNICATIONS COMMISSION
## WASHINGTON, D.C.

### CERTIFICATE OF FORFEITURE

**Violator(s) Name(s) and**                Net One International, Inc.
**Address(es):**                           4037 Metric Drive, Suite 200
                                           Winter Park, Florida 32792

**Total forfeiture assessed by FCC as of** August 3, 2016 **in the amount of** $1,600,000.00:
I certify that Federal Communications Commission records show that the violator named above
has been ordered to pay to the United States the amount stated above.

This claim arose in connection with:

> Notice of Apparent Liability For Forfeiture released July 15, 2014
> Forfeiture Order released March 9, 2016

**CERTIFICATION:**  Pursuant to 28 USC § 1746, I certify under penalty of perjury that the
foregoing is true and correct.

10/13/2016
(Date)

Susan L. Launer
Deputy Associate General Counsel

JS 44   (Rev. 11/15)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a)  PLAINTIFFS | DEFENDANTS |
|---|---|
| United States of America | NetOne International, Inc. |

| **(b)** County of Residence of First Listed Plaintiff | County of Residence of First Listed Defendant   Orange |
|---|---|
| *(EXCEPT IN U.S. PLAINTIFF CASES)* | *(IN U.S. PLAINTIFF CASES ONLY)* |
| | NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED. |

| **(c)** Attorneys *(Firm Name, Address, and Telephone Number)* | Attorneys *(If Known)* |
|---|---|
| Phillip R.S. Ragler, Assistant United States Attorney | |

## II.  BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☒ 1  U.S. Government
Plaintiff

☐ 2  U.S. Government
Defendant

☐ 3  Federal Question
*(U.S. Government Not a Party)*

☐ 4  Diversity
*(Indicate Citizenship of Parties in Item III)*

## III.  CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                              *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV.  NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☒ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | ☐ 840 Trademark | ☐ 460 Deportation |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) | ☐ 480 Consumer Credit |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | | | ☐ 790 Other Labor Litigation | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Employee Retirement Income Security Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 896 Arbitration |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1  Original
Proceeding

☐ 2  Removed from
State Court

☐ 3  Remanded from
Appellate Court

☐ 4  Reinstated or
Reopened

☐ 5  Transferred from
Another District
*(specify)*

☐ 6  Multidistrict
Litigation

## VI.  CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
47 U.S.C. Section 504(a)

Brief description of cause:
Collection of Debt owed to the Federal Communications Commission

| VII.  REQUESTED IN COMPLAINT: | ☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P. | DEMAND $ | CHECK YES only if demanded in complaint: JURY DEMAND:   ☐ Yes   ☐ No |
|---|---|---|---|

| VIII. RELATED CASE(S) IF ANY | *(See instructions):* | JUDGE | DOCKET NUMBER |
|---|---|---|---|

DATE  8/16/18

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

| RECEIPT # | AMOUNT | APPLYING IFP | JUDGE | MAG. JUDGE |
|---|---|---|---|---|